

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
02/19/2010

IN RE: §
§
CROSS CANYON ENERGY CORP., § CASE NO. 10-30747
§
Debtor. § (Chapter 11)
§
§

# FINAL ORDER AUTHORIZING USE OF CASH COLLATERAL, GRANTING ADEQUATE PROTECTION AND RELATED RELIEF
[Relates to Docket Nos. 9 and 31]

The Court has considered the Debtor's Emergency Motion Authorizing Interim and Final Use of Cash Collateral, Granting Adequate Protection and Related Relief (the "Motion"),[1] the Declaration of Carl A. Chase in Support of Voluntary Petition, First-Day Motions and Designation as Complex Bankruptcy Case.

## INTERIM CASH COLLATERAL HEARING

On February 2, 2010, the Court held an interim hearing on the Motion and on February 3, 2010, the Court entered its Interim Order Authorizing Interim and Final Use of Cash Collateral, Granting Adequate Protection and Related Relief [Docket No. 31] (the "Interim Order"). Pursuant to the Interim Order, any objections to the relief requested to the Motion were to be filed and served on or before February 13, 2010. The Court held a final hearing (the "Hearing") on the Motion on February 19, 2010.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Having considered the Motion, evidence proffered or presented, and arguments of counsel, the Court hereby finds and concludes as follows:

---

[1] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

**FINAL ORDER AUTHORIZING USE OF CASH COLLATERAL,
GRANTING ADEQUATE PROTECTION AND RELATED RELIEF - PAGE 1**
513854 000004 DALLAS 2580149.1

## JURISDICTION AND VENUE

A.  Jurisdiction over the matters in the Motion is proper pursuant to 28 U.S.C. §1334. Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. §157(b)(2)(A), (D), (G), (K), (M), and (O). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## NOTICE

B.  Under the circumstances, the notice given by the Debtor, the mailing of the Interim Order by first class mail, postage prepaid, and the Hearing constitute due and sufficient notice thereof and complies with Rules 2002 and 4001(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules of this Court.

## OPPORTUNITY TO OBJECT

C.  The mailing of a copy of this Final Cash Collateral Order by first class mail, postage prepaid, on the Master Service List shall be deemed to constitute compliance with the applicable notice provisions of Bankruptcy Rule 4001 regarding agreements for use of cash collateral and relief from the automatic stay.

## THE FILING/COMMITTEE STATUS

D.  On January 29, 2010 (the "Petition Date"), Cross Canyon Energy Corp. ("Cross Canyon" or the "Debtor") filed a voluntary petition for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Since the Petition Date, the Debtor has continued to operate and manage its business as debtor-in-possession pursuant to Bankruptcy Code §§1107(a) and 1108.

E.  To date, the office of the United States Trustee (the "US Trustee") has not appointed an official committee of unsecured creditors (the "Committee").

## CIT'S CLAIMS

F. The Debtor acknowledges that as of the Petition Date, Cross Canyon was justly and lawfully indebted and liable to the Administrative Agents and other Lenders (collectively, "<u>CIT</u>"), without defense, counterclaim, or offset of any kind under the (a) Debtor's Amended and Restated Credit Agreement, dated September 2, 2008 (the "<u>CIT Revolving Loan Agreement</u>") in the aggregate principal amount of $11,500,000, plus accrued and unpaid interest of $488,184.63 and costs and expenses including, without limitation, attorney's fees, agent's fees, other professional fees and disbursements and other obligations (the "<u>CIT Revolving Loan</u>"), (b) Debtor's Second Lien Term Loan Agreement, dated September 2, 2008 (the "<u>CIT Term Loan Agreement</u>") in the aggregate principal amount of $22,000,000, plus accrued and unpaid interest of $1,450,396.04 and costs and expenses including, without limitation, attorney's fees, agent's fees, other professional fees and disbursements and other obligations (the "<u>CIT Term Loan</u>"). The CIT Revolving Loan and the CIT Term Loan are hereafter collectively referred to as the "<u>Prepetition Obligations</u>", and the CIT Revolving Loan Agreement and the CIT Term Loan Agreement, together with any and all documents executed in connection therewith, the "<u>Financing Documents</u>." The Debtor acknowledges that, as of the Petition Date, the Prepetition Obligations constitute legal, valid and binding secured obligations of the Debtor, enforceable in accordance with their respective terms, and that no portion of the Prepetition Obligations or any amounts paid to CIT or applied to obligations owing under the Financing Documents before the Petition Date is subject to avoidance, subordination, recharacterization, recovery, attack, offset, counterclaim, defense or Claim (as such term is defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

G. The Debtor further acknowledges that (a) the CIT Revolving Loan is secured by first priority, valid, binding, perfected and enforceable liens and security interests, and (b) the

CIT Term Loan is secured by second priority, valid, binding, perfected and enforceable liens and security interests (collectively, the "Prepetition Liens") granted by the Debtor to CIT under the Financing Documents, upon and in substantially all of the assets and property of the Debtor whether then owned or thereafter acquired or arising, and all proceeds and products thereof (collectively, the "Prepetition Collateral"). The Debtor further acknowledges that the Prepetition Liens upon, and security interests in, the Prepetition Collateral are not subject to avoidance, subordination, recharacterization, recovery, attack, offset, counterclaim, defense or Claim (as such term is defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

H. The Debtor further acknowledges that all of the cash of the Debtor in existence on the Petition Date, other than cash due to royalty owners, if any, and all of the cash acquired by the Debtor thereafter consisting of proceeds of the Prepetition Collateral, other than cash due to royalty owners, if any (whether as proceeds of the Prepetition Collateral or otherwise), constitutes cash collateral (the "Cash Collateral") within the meaning of section 363(a) of the Bankruptcy Code.

I. The Debtor has requested immediate entry of this Order pursuant to Bankruptcy Rule 4001(b)(2), as the Debtor has an immediate need to obtain the use of the Cash Collateral in order to permit, among other things, the preservation of the Debtor's business and assets and the orderly administration of its estate. Without access to such funds, the Debtor will be unable to pay its ongoing operating expenses. The ability of the Debtor to obtain liquidity through the use of the Cash Collateral is vital to the Debtor, to the Debtor's effort to maximize the value of its assets and to expedite confirmation of its prepackaged plan of reorganization. Absent entry of this Order, the estate herein will be immediately and irreparably harmed.

J.  The Debtor has two non-filing wholly owned subsidiaries, CCEC Operating Company ("CCEC") and Voyager Gas Corporation ("Voyager").

K.  The terms of this Order and the emergency use by the Debtor of the Cash Collateral, as set forth herein, have been negotiated in good faith and at arm's length between the Debtor and CIT within the meaning of section 363(m) of the Bankruptcy Code.

Based upon the foregoing findings and conclusions, upon the Motion and other pleadings filed in this Chapter 11 Case, and upon the record made before this Court at the Final Hearing, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1.  <u>Approval</u>.  The Motion is GRANTED, subject to the terms and conditions set forth in this Order.  Any objections to the Motion with respect to the entry of this Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, hereby are denied and overruled.

2.  <u>Authorization</u>.  Subject to the terms of this Order, the Debtor is authorized to use Cash Collateral from the date of entry of this Order through the Termination Date (as defined in paragraph 12 below).  Cash Collateral may be used during the period from the date of entry of this Order through the Termination Date (the "<u>Period</u>") on an emergency basis to pay those costs and expenses contained in the budget (the "<u>Cash Collateral Budget</u>") attached as **Exhibit A** hereto, solely up to the amounts, at the times and for the purposes identified in the Cash Collateral Budget.  The Debtor shall not, without the prior written consent of CIT, use Cash Collateral with respect to any single week in the Cash Collateral Budget in an amount in excess of the aggregate amount budgeted for that week, subject to a permitted variance of 10% and subject to the following sentence.  The expenditures authorized in the Cash Collateral Budget

shall be adhered to on a line item basis, but the Debtor may carry forward to successive weeks any unused amounts in a line item to a subsequent week or weeks.

3. <u>Adequate Protection</u>. As of the date of this Order, CIT shall receive adequate protection for any diminution in value resulting from (a) the use by the Debtor of the Cash Collateral and any other Prepetition Collateral, and (b) the imposition of the automatic stay pursuant to Section 362 of the Bankruptcy Code, as follows:

    (a) <u>Adequate Protection Liens</u>. Pursuant to sections 361 and 363(e) of the Bankruptcy Code, CIT hereby is granted continuing, valid, binding, enforceable, non-avoidable and automatically and properly perfected first priority security interests in and liens (collectively, the "<u>Adequate Protection Liens</u>") on all of the Prepetition Collateral and, except for causes of action under chapter 5 of the Bankruptcy Code (all such actions, the "<u>Avoidance Actions</u>"), which Adequate Protection Liens shall have recourse to all hereafter acquired assets, whether real or personal property of the Debtor, together with any proceeds thereof (the "<u>Collateral</u>"), exclusive of the proceeds of the Avoidance Actions. The Adequate Protection Liens shall be senior and prior to all other interests or liens whatsoever in or on the Collateral, and shall be subject and subordinate only to the Carve-Out (defined in paragraph 5 below) and valid, perfected and unavoidable liens or security interests on the Petition Date or liens perfected after the Petition Date the priority and perfection of which relates back to a date prior to the Petition Date as permitted by section 546(b) of the Bankruptcy Code;

    (b) <u>Superpriority Claim</u>. CIT shall be allowed a superpriority administrative expense claim (the "<u>Superpriority Claim</u>"), which shall have priority in this Chapter 11 Case under sections 503(b) and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and other unsecured claims whether in existence on or arising after the Petition Date against the Debtor and its estate of any kind or nature whatsoever, and shall be subordinate only to the Carve-Out; and

    (c) <u>Reimbursement of Costs</u>. As additional adequate protection and in consideration for the Debtor's use of Cash Collateral, the Debtor shall reimburse CIT for its reasonable out-of-pocket expenses incurred both prior to the Petition Date and during this Chapter 11 Case, with regard to the obligations of the Debtor to CIT under the Financing Documents.

4. <u>Adequate Protection to Other Secured Creditors</u>. As adequate protection to any other secured creditor of the estate that may exist (including any creditor asserting a statutory

lien) for any diminution in value that may result from the Debtor's use of the Cash Collateral, but only to the extent such secured creditor holds a valid and perfected, non-avoidable lien and security interest such Collateral, including Cash Collateral, as of the Petition Date, such secured creditor hereby is granted effective upon the Petition Date and without the necessity of the execution or filing of mortgages, security agreements, pledge agreements, financing statements, or otherwise, a replacement security interest and lien in the Debtor's postpetition collateral in the same amount, and with the same validity and priority as such lien had as of the Petition Date. The Debtor and CIT reserve all rights to contest the amount, validity and priority of any and all liens and security interests asserted by such other secured creditors.

5. <u>Carve-Out</u>. The Prepetition Liens, the Adequate Protection Liens and the Superpriority Claim granted herein are subordinate to the following (the "<u>Carve-Out</u>"): (a) allowed administrative expenses pursuant to 28 U.S.C. § 1930(a)(6); (b) allowed and approved fees, costs and expenses of attorneys, consultants and financial advisors employed by the Debtor pursuant to sections 327, 363 and 1103 of the Bankruptcy Code in accordance with the Cash Collateral Budget and actually incurred prior to the Termination Date (as defined in paragraph 12); and (c) the allowed and approved fees, costs and expenses of attorneys, consultants and financial advisors employed by any Committee, if appointed, in this Chapter 11 Case pursuant to sections 327, 363 and 1103 of the Bankruptcy Code, of an amount not to exceed $25,000 (the "<u>Investigation Amount</u>") for the purpose of reviewing and investigating the amount, validity and priority of the Prepetition Liens. The Investigation Amount shall not be available to the Committee until the earlier of (a) denial of confirmation of the Plan, and (b) the withdrawal or abandonment of the Plan by the Debtor.

6. The Debtor is authorized to use Cash Collateral to pay the fees, costs and expenses that constitute the Carve-Out such as may be due and payable, so long as the Termination Date has not occurred, provided that no portion of the Prepetition Collateral or the Cash Collateral may be used by the Debtor, any statutory committee appointed in this Chapter 11 case, either of their professionals, or any other person or entity, to commence or prosecute any action, contest, challenge or objection with respect to CIT, or any of the Prepetition Obligations, the Financing Documents, the Prepetition Liens, the Prepetition Collateral, the Adequate Protection Liens and the Collateral.

7. Except to the extent of the Carve-Out, no expenses of administration of this Chapter 11 Case, or any proceeding that may result therefrom, including liquidation under the Bankruptcy Code, shall be charged against or recovered from the Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of CIT, and no such consent shall be implied from any action, inaction or acquiescence by CIT.

8. No Offsets or Recoupment. No Cash Collateral or Prepetition Obligations shall be subject to any right of offset or recoupment by any account debtor of the Debtor arising prior to the Petition Date.

9. Collection of Cash Collateral and Rights of Access. Pursuant to the Interim Order, the Debtor is authorized and directed to maintain the cash management system in use by the Debtor as of the Petition Date in accordance with the Financing Documents. All rights of access afforded or required to be provided by the Debtor to CIT under the Financing Documents shall apply hereunder and be deemed incorporated in this Order. Without limiting such rights, the Debtor shall permit representatives, agents and employees of CIT to have reasonable access to its premises and its records during normal business hours and shall cooperate, consult with,

and provide to such persons all such information as they may reasonably request. The Debtor agrees to furnish to CIT, in form and substance reasonably satisfactory to CIT, weekly reports of receipts, disbursements and a reconciliation of actual expenditures and disbursements with those set forth in the Cash Collateral Budget, on a line item basis showing any variance to the proposed corresponding line item of the Cash Collateral Budget (the "Budget Reconciliation"). Such Budget Reconciliation shall be provided to CIT so as actually to be received within five (5) business days following the end of each prior week.

10. **Reservation of Rights with Respect to Adequate Protection.** Under the circumstances, and given the consent of CIT to the emergency use of the Cash Collateral as provided herein, and that the grant of adequate protection set forth in paragraph 3 is consistent with the Bankruptcy Code, the Court finds that the adequate protection provided herein is reasonably designed to protect the legal interests of CIT, including in the Cash Collateral. Notwithstanding any other provision hereof, the grant of adequate protection to CIT pursuant to this Order is without prejudice to the rights of CIT to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection, and without prejudice to the right of the Debtor or any other party in interest to contest any such modification.

11. **Nature of the Adequate Protection Liens.** The Adequate Protection Liens granted pursuant to this Order shall constitute valid and duly perfected security interests and liens, and CIT shall not be required to file or serve mortgages, Uniform Commercial Code financing statements, notices of lien or similar instruments which otherwise may be required under federal or state law in any jurisdiction, or take any action, including taking possession, to validate and perfect such security interests and liens; and the failure by the Debtor to execute or file any

documentation relating to the Adequate Protection Liens shall in no way affect the validity, perfection or priority of such Adequate Protection Liens. If, however, CIT, in its sole discretion, determines to file any such mortgages, Uniform Commercial Code financing statements, notices of lien or similar instruments, or to otherwise confirm perfection of such Adequate Protection Liens (a) the Debtor is directed to provide reasonable cooperation with and assist CIT in doing so, (b) the stay imposed by section 362(a) of the Bankruptcy Code hereby is modified to allow the filing and recording in any jurisdiction of a certified copy of this Order or any mortgages, Uniform Commercial Code financing statements, notices of lien or similar instruments, and (c) all such documents shall be deemed to have been filed or recorded as of the Petition Date. A certified copy of this Order may, in the discretion of CIT, be filed with or recorded in a filing or recording office in addition to, or in lieu of, a mortgage, Uniform Commercial Code financing statement, notice of lien or similar instrument, and all filing and recording offices are hereby authorized to accept such certified copy of this Order for filing and recording.

12. <u>Termination</u>. Upon the earliest to occur of (a) March 31, 2010, (b) the dismissal of this Chapter 11 Case or the conversion of this Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code; (c) the entry by this Court of an order granting relief from the automatic stay imposed by section 362 of the Bankruptcy Code to any entity other than CIT with respect to the Prepetition Collateral or the Collateral without the written consent of CIT, which consent may be withheld in its reasonable business discretion; (d) the appointment or election of a trustee, examiner with expanded powers or any other representative with expanded powers; (e) the occurrence of the effective date or consummation date of a plan of reorganization for the Debtor; (f) the failure by the Debtor to deliver to CIT any of the documents or other information required to be delivered pursuant to this Order when due; (g) the failure by the Debtor to observe

or perform any of the material terms or material provisions contained herein, including by providing information required by this Order which contains a material misrepresentation, three business days following the receipt by the Debtor of notice thereof; (h) the entry of an order of this Court approving the terms of any debtor-in-possession financing for the Debtor without the written consent of CIT, which consent may be withheld in its reasonable business discretion; and (i) the entry of an order of this Court reversing, staying, vacating or otherwise modifying in any material respect the terms of this Order (the "<u>Termination Date</u>"), the Debtor's right to use Cash Collateral as approved herein shall automatically terminate without notice or further order of this Court. The Termination Date may be extended from time to time by a written agreement between CIT and the Debtor without the need for further approval of this Court, subject only to the delivery of written notice thereof to counsel to any statutory committee appointed in this Chapter 11 Case and the filing of such notice with this Court.

    13.    <u>Waiver of Rights by Debtor</u>. Without the prior written consent of CIT, the Debtor shall not seek (a) prior to the termination of the Debtor's right to use Cash Collateral, entry of an order dismissing this Chapter 11 Case or converting the case to one under Chapter 7 of the Bankruptcy Code, or (b) any order authorizing, under any section of the Bankruptcy Code, including, without limitation, sections 105 or 364 of the Bankruptcy Code, (i) the grant of any lien or security interest in any property of the Debtor in favor of any party other than CIT equal or superior to the Prepetition Liens or the Adequate Protection Liens with respect to the Prepetition Collateral and the Collateral, or (ii) the extension of credit or the incurrence of indebtedness entitled to superpriority administrative expense status equal or superior to that granted to CIT pursuant to this Order.

14. <u>Debtor's Ongoing Cooperation</u>. The Debtor is authorized and directed to perform all acts, and to execute, deliver and comply with the terms of the Financing Documents and such other documents, instruments and agreements as CIT may reasonably require, or which otherwise may be deemed reasonably necessary by CIT to effectuate the terms and conditions of this Order.

15. <u>Section 363(m) Protection.</u> As CIT is consenting to the emergency use of Cash Collateral in good faith, CIT is entitled to the full protections of section 363(m) of the Bankruptcy Code with respect to the Adequate Protection Liens and all other forms of adequate protection created or authorized by this Order in the event that this Order or any authorization contained herein is stayed, vacated, reversed or modified on appeal. Any stay, modification, reversal, or vacation of this Order shall not affect the validity of any obligation of the Debtor to CIT incurred pursuant to this Order. Notwithstanding any stay, modification, reversal or vacating, the emergency use of Cash Collateral by the Debtor pursuant to this Order hereto, prior to the effective date of such stay, modification, reversal or vacation, shall be governed in all respects by the original provisions of this Order, and CIT shall be entitled to all the rights, privileges, and benefits, including, without limitation, the Adequate Protection Liens, the Collateral, and the Superpriority Claim granted herein.

16. <u>Credit Bidding</u>. The right of CIT to Credit bid under Sections 363(k) and 1129 of the Bankruptcy Code shall be preserved with respect to the Debtor and its assets during the pendency of this case, subject only to the application of such provisions of the Bankruptcy Code that may limit such right.

17. <u>CIT Not in Control of the Debtor</u>. In consenting to the emergency use of the Cash Collateral, CIT shall not be deemed to be or have been in control of the operations of the Debtor

and by negotiating, executing and lending under this Order, shall not be deemed to be a "responsible person" or "owner or operator" with respect to the operation and management of the Debtor (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§9601 et seq., as amended, or any similar federal or state statute).

18. Survival. The provisions of this Order and any actions taken pursuant hereto shall survive, and shall not be modified, impaired or discharged by, the entry of any order having the effect of (a) confirming any plan of reorganization in the Chapter 11 Case; (b) converting the Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code; (c) appointing or electing any Chapter 11 trustee or any examiner with expanded powers; or (d) dismissing this Chapter 11 Case, and the terms and provisions of this Order, as well as the Superpriority Claim and the Adequate Protection Liens granted pursuant to this Order, shall continue in full force and effect notwithstanding the entry of such order, and such Superpriority Claim and the Adequate Protection Liens shall maintain their priority as provided by this Order until all of the obligations of the Debtor to CIT under this Order and all of the Prepetition Obligations are indefeasibly paid in full and discharged. Notwithstanding the occurrence of the Termination Date or anything in this Order to the contrary, all of the rights, remedies, benefits and protections provided to CIT, and all obligations of the Debtor to provide financial and other information to, and to cooperate with CIT under this Order and the Financing Documents shall survive the Termination Date.

19. Effect of Entry. Entry of this Order shall be without prejudice to any and all rights, remedies, claims and causes of action which CIT may have against the Debtor or third parties and without prejudice to the right of CIT to seek relief from the automatic stay in effect pursuant to section 362 of the Bankruptcy Code or any other relief in this Chapter 11 Case. The

provisions of this Order shall be binding upon the Debtor and its respective successors and assigns, including any trustee or other fiduciary hereafter appointed in this Chapter 11 Case or in a subsequent case as a legal representative of the Debtor or the Debtor's estate, all creditors of the Debtor and all other parties in interest.

20. <u>Effect of Stipulation on Third Parties</u>. The Debtor's admissions, stipulations and releases contained in this Order including, without limitation, paragraphs F, G and H of this Order: (a) shall be binding upon the Debtor for all purposes; and (b) shall be binding upon all other parties in interest and the Committee (if any) for all purposes unless (1) a party (subject in all respects to any agreement or applicable law which may limit or affect such entity's right or ability to do so) has properly filed an adversary proceeding or contested matter by no later than 30 days after the earlier of (a) denial of the confirmation of the Plan, and (b) the Debtor's withdrawal or abandonment of the Plan (x) challenging the amount, validity, enforceability, priority or extent of any of the Prepetition Obligations, the Prepetition Liens or the Prepetition Collateral, or (y) otherwise asserting any claims or causes of action against CIT on behalf of the Debtor's estate, and (2) the Court rules in favor of the plaintiff in any such timely and properly filed adversary proceeding or contested matter. If no such adversary proceeding or contested matter is properly filed within the requisite time period or the Court does not rule in favor of the plaintiff in any such proceeding, then for all purposes in this Chapter 11 Case and any subsequent case under Chapter 7 of the Bankruptcy Code: (a) the Debtor's admissions, stipulations and releases contained in this Order shall be binding on all parties in interest; (b) the obligations of the Debtor under the Financing Documents shall constitute allowed claims for all purposes in this Chapter 11 Case and in any subsequent Chapter 7 case; (c) the Prepetition Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, first and

second priority security interests and liens, not subject to recharacterization, subordination or otherwise avoidable; and (d) the Prepetition Obligations and the Prepetition Liens shall not be subject to any other or further challenge, attack, offset, counterclaim or defense by the Committee (if any) or any other party in interest seeking to exercise the rights of the Debtor's estate, including, without limitation, any successor thereto. If any such adversary proceeding or contested matter is properly filed within the requisite time period, the Debtor's admissions, stipulations and releases contained in this Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) except to the extent that such specific admissions and releases were expressly challenged in such adversary proceeding or contested matter. Pursuant to this Order, the Committee (if any) shall be deemed to have standing to commence any such adversary proceeding or contested matter; provided, however, that nothing contained in this Order shall be deemed to grant standing to any other party to commence any such adversary proceeding or contested matter.

21. **Effective Date.** Pursuant to Bankruptcy Rule 6004(h), this Order shall be immediately effective and enforceable upon its entry.

SIGNED this 19th day of February, 2010.

_____
**UNITED STATES BANKRUPTCY JUDGE**

| | Week 1 Jan 25 to Jan 31 | Week 2 Feb 1 to Feb 7 | Week 3 Feb 8 to Feb 14 | Week 4 Feb 15 to Feb 21 | Week 5 Feb 22 to Feb 28 | Week 6 Mar 1 to Mar 7 | Week 7 Mar 8 to Mar 14 | Week 8 Mar 15 to Mar 21 | Week 9 Mar 22 to Mar 28 | Week 10 Mar 29 to Apr 4 | Week 11 Apr 5 to Apr 11 | Week 12 Apr 12 to Apr 18 | Week 13 Apr 19 to Apr 25 | Total for Period |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Cross Canyon Energy Corp.** | | | | | | | | | | | | | | |
| **Cash receipts:** | | | | | | | | | | | | | | |
| Energy hedges | $ - | $ - | $ - | $ - | $ 87,345 | $ - | $ - | $ - | $ 77,150 | $ - | $ - | $ - | $ 83,581 | $ 248,076 |
| Total cash receipts | - | - | - | - | 87,345 | - | - | - | 77,150 | - | - | - | 83,581 | 248,076 |
| **Cash disbursements:** | | | | | | | | | | | | | | |
| General and administrative: | | | | | | | | | | | | | | |
| Payroll and related | - | - | 4,592 | 28,656 | 28,378 | 339,800 | 4,592 | 26,794 | - | 26,794 | 4,592 | - | 26,794 | 490,991 |
| Office administration | - | 7,801 | 650 | 989 | - | 7,801 | 650 | 1,810 | - | 7,801 | 650 | - | 989 | 29,141 |
| Professional services | - | 9,259 | - | 12,000 | - | 9,259 | - | 13,000 | - | 12,759 | 12,000 | - | - | 68,277 |
| Other | - | 3,657 | - | 750 | - | 2,850 | - | - | - | 3,825 | - | - | - | 11,082 |
| Total G&A | - | 20,717 | 5,242 | 42,395 | 28,378 | 359,710 | 5,242 | 41,604 | - | 51,179 | 17,242 | 27,783 | - | 599,491 |
| Accounts payable at 1/25/10 | 5,853 | | | 250 | | | | | | | | | | 6,103 |
| CIT fees | | | | 20,000 | | 220,000 | | | | | | | | 220,000 |
| Reorganization fees | 10,000 | | | 20,000 | | | | | | | | | | 30,000 |
| Federal income taxes | | | 16,944 | 1,500 | | | | | | | | | | 18,444 |
| Interest expense | | | | | | | | | | 45,833 | | | | 45,833 |
| Total cash disbursements | 15,853 | 20,717 | 22,186 | 64,145 | 28,378 | 579,710 | 5,242 | 41,604 | - | 97,012 | 17,242 | 27,783 | - | 919,871 |
| Increase/(decrease) in cash | (15,853) | (20,717) | (22,186) | (64,145) | 58,968 | (579,710) | (5,242) | (41,604) | 77,150 | (97,012) | (17,242) | (27,783) | 83,581 | (671,795) |
| Cash at beginning of period | 655,671 | 639,818 | 619,101 | 596,915 | 532,771 | 591,738 | 12,029 | 6,787 | (34,817) | 42,333 | (54,680) | (71,922) | (99,705) | 655,671 |
| Cash at end of period | 639,818 | 619,101 | 596,915 | 532,771 | 591,738 | 12,029 | 6,787 | (34,817) | 42,333 | (54,680) | (71,922) | (99,705) | (16,124) | (16,124) |
| **Voyager Gas/CCEC Operating** | | | | | | | | | | | | | | |
| **Cash receipts:** | | | | | | | | | | | | | | |
| Flint Hills Resources | | | | 179,861 | | | | 162,725 | 154,543 | | | | 166,807 | 509,393 |
| Copano Field Services | | | | | 174,809 | | | | | | | | 167,487 | 496,839 |
| Upstream Energy Services | - | 10,350 | | | | 9,674 | | | | 8,426 | | | | 28,450 |
| Total cash receipts | - | 10,350 | - | 179,861 | 174,809 | 9,674 | - | 162,725 | 154,543 | 8,426 | - | - | 334,293 | 1,034,682 |
| **Cash disbursements:** | | | | | | | | | | | | | | |
| Lease operating expenses | 9,564 | 9,564 | 9,564 | 9,564 | 25,579 | 9,564 | 9,564 | 17,564 | 25,579 | 20,814 | 20,814 | 20,814 | 36,829 | 225,380 |
| Natural gas severance taxes | | | | 11,513 | | | | 13,836 | | | | | 11,591 | 36,940 |
| Capital expenditures | | | | | | | | | | | | | 145,000 | 145,000 |
| Royalties payable | | | | 86,440 | | | | 91,086 | | | | | 81,424 | 258,949 |
| Accounts payable at 1/25/10 | 41,865 | 165 | 24,754 | 20,930 | | | | | | | | | | 87,714 |
| Total cash disbursements | 51,429 | 9,729 | 34,318 | 128,447 | 25,579 | 9,564 | 9,564 | 122,487 | 25,579 | 20,814 | 20,814 | 20,814 | 274,843 | 753,984 |
| Increase/(decrease) in cash | (51,429) | 621 | (34,318) | 51,414 | 149,230 | 110 | (9,564) | 40,239 | 128,963 | (12,388) | (20,814) | (20,814) | 59,450 | 280,699 |
| Cash at beginning of period | 233,934 | 182,505 | 183,126 | 148,808 | 200,222 | 349,452 | 349,562 | 339,998 | 380,237 | 509,200 | 496,812 | 475,997 | 455,183 | 233,934 |
| Cash at end of period | 182,505 | 183,126 | 148,808 | 200,222 | 349,452 | 349,562 | 339,998 | 380,237 | 509,200 | 496,812 | 475,997 | 455,183 | 514,633 | 514,633 |
| **Summary** | | | | | | | | | | | | | | |
| Increase/(decrease) in cash | (67,282) | (20,096) | (56,504) | (12,730) | 208,198 | (579,600) | (14,806) | (1,365) | 206,113 | (109,401) | (38,056) | (48,597) | 143,031 | (391,096) |
| Cash at beginning of period | 889,605 | 822,324 | 802,228 | 745,723 | 732,993 | 941,191 | 361,591 | 346,784 | 345,419 | 551,533 | 442,132 | 404,076 | 355,478 | 889,605 |
| Cash at end of period | $ 822,324 | $ 802,228 | $ 745,723 | $ 732,993 | $ 941,191 | $ 361,591 | $ 346,784 | $ 345,419 | $ 551,533 | $ 442,132 | $ 404,076 | $ 355,478 | $ 498,509 | $ 498,509 |



EXHIBIT A